UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

**Valerie Jeffreys,**  Civil No. 05-2196 (JNE/JJG)

Plaintiff,

v.  **REPORT AND RECOMMENDATION**

**Jo Anne B. Barnhart**,
Commissioner of
Social Security,

Defendant.

---

JEANNE J. GRAHAM, United States Magistrate Judge.

Plaintiff Valerie Jeffreys seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), who denied her application for social security disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 401 *et seq*. The matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1. The parties have submitted cross motions for summary judgment. For the reasons set forth below, this Court recommends that the Commissioner's decision be affirmed and the case be dismissed with prejudice.

## I. INTRODUCTION

Valerie Jeffreys was born on January 14, 1960. (R. at 376). Ms. Jeffreys filed an application for social security disability insurance benefits on February 21, 2003. (R. at 67).[1] She alleged she was disabled due to "a hand injury for which I now have partial use" (R. at 69), with an onset date of January

---

[1] Plaintiff filed an application for social security disability insurance benefits on August 21, 2001. This application was disapproved on December 12, 2001. Plaintiff did not appeal this denial. Plaintiff then filed the instant application on February 21, 2003.

7, 2003. (R. at 67). The Social Security Administration denied the application initially and on reconsideration. (R. at 28-29, 30-31). Ms. Jeffreys timely filed a request for a hearing, which was held before an Administrative Law Judge ("ALJ") on February 17, 2005.

The ALJ issued an unfavorable decision on May 16, 2005. (R. at 15). In his decision, the ALJ employed the five-step sequential analysis required under 20 C.F.R. §§ 404.1574 and 416.920. During the five-step analytical process, the ALJ considers whether (1) the claimant is gainfully employed, (2) the claimant has a severe impairment, (3) the claimant's impairment meets or equals the level of severity described in the Listing of Impairments, (4) the impairment prevents the claimant from performing past relevant work, and (5) the impairment necessarily prevents the claimant from doing any other work. Ramirez v. Barnhart, 292 F.3d 576, 580 (8th Cir. 2002).

In step one of the analysis, the ALJ found no evidence that Ms. Jeffreys had worked since January 7, 2003, and concluded that Plaintiff has not, therefore, engaged in substantial gainful activity since the alleged date of onset. (R. at 24). Next, the ALJ found Ms. Jeffreys to be severely impaired by a history of a left hand laceration, status-post wound exploration, with subsequent evidence of possible reflex sympathetic dystrophy; right hip trochanteric bursitis; cervical and lumbar strains; and a history of migraine headaches. (Id.). The ALJ noted no evidence of severe medically determinable mental impairment in the record. (Id.). In step three, the ALJ then determined that Ms. Jeffreys does not have an impairment or combination of impairments that meets or equals the relevant criteria of any listed impairment in the Listing of Impairments contained in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Id.).

In step four of the sequential analysis, the ALJ concluded that Ms. Jeffreys retains the Residual Functional Capacity ("RFC") to perform "work requiring lifting 15 pounds occasionally and five pounds

frequently with the right dominant upper extremity, only occasional use of the left upper extremity, with lifting no more than two pounds occasionally, and no firm grasping with that extremity, sitting eight hours in an eight-hour workday, and standing/walking six hours in an eight-hour workday, with only occasional bending stooping and crouching." (Id.). The ALJ concluded that Plaintiff's impairments preclude her from performing her past relevant work. (Id.). Finally, the ALJ determined that Ms. Jeffreys can perform a significant number of jobs in the national economy when considering her RFC and her age, education and past experience in skilled work. (Id.). The ALJ, therefore, determined that Ms. Jeffreys is not disabled. (R. at 25).

Plaintiff submitted a request for review of the ALJ's decision to the Appeals Council. (R. at 11). The Appeals Council denied the request for review on September 7, 2005. (R. at 8). The decision of the ALJ therefore became the final decision of the Commissioner. (Id.).

## II.      DISCUSSION

### A.      Standard of Review

When reviewing the Commissioner's decision, the Court neither reweighs the evidence, nor reviews the factual record de novo. Flynn v. Chater, 107 F.3d 617, 620 (8th Cir. 1997). The scope of review is narrow; the Court must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole. Collins v. Barnhart, 335 F.3d 726, 729 (8th Cir. 2003). In determining whether evidence is substantial, the Court must consider "evidence that detracts from the Commissioner's decision as well as evidence that supports it." Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999). Substantial evidence is less than a preponderance, but enough that a reasonable mind might find adequate to support the ALJ's conclusion. Johnson v. Apfel, 240 F.3d 1145,

1147 (8th Cir. 2001). As long as there is substantial evidence in the record supporting the Commissioner's conclusion, the Court cannot reverse merely because it would have decided the case differently. Roberts v. Apfel, 222 F.3d 466, 468 (8th Cir. 2000).

### B. The ALJ's Consideration of the Plaintiff's Treating Physician's Opinion

Ms. Jeffreys challenges the Commissioner's decision on the grounds that the ALJ erred by according inadequate weight to the opinion of her treating physician, Dr. David Ruebeck. Specifically, Plaintiff argues the ALJ failed to properly consider Plaintiff's limitations as set forth in Dr. Ruebeck's "Social Security Hand/Upper Extremity RFC Questionnaire," and to properly include them in the hypotheticals posed to the vocational expert at the hearing. Respondent argues that the ALJ properly considered the medical evidence presented, including Dr. Ruebeck's opinions.

#### 1. Legal Standard for Deference to Treating Physicians

A treating physician's opinion is typically entitled to substantial weight. Dixon v. Barnhart, 353 F.3d 602, 606 (8th Cir. 2003); see also 20 C.F.R. § 416.927(d)(2). A treating physician's opinion is given "controlling weight" if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (citations omitted). The opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence. Jenkins v. Apfel, 196 F.3d 922, 925 (8th Cir. 1999) quoting Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998). Likewise, the testimony of a vocational expert who responds to a hypothetical based on such evidence is not substantial evidence upon which to base a denial of benefits. Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). Finally, an ALJ is not required to assign special weight to the source of an opinion when making final determinations reserved

to the Commissioner, 20 C.F.R. § 416.927(e). That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability. A treating physician's statement that the a claimant is disabled cannot itself be determinative. Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir.1991).

### 2. ALJ's Considerations of Dr. Ruebeck's Opinions

Plaintiff argues that the ALJ committed reversible error by giving inadequate weight to the opinion of her orthopedic surgeon, Dr. Ruebeck. Plaintiff argues that based upon the limitations reported by Dr. Ruebeck, the ALJ should have concluded that Plaintiff is unable to work any jobs. The record contains a "Social Security Hand/Upper Extremity RFC Questionnaire" ("RFC Questionnaire") completed on May 13, 2005, by Plaintiff's orthopedic surgeon, David Ruebec, MD. Dr. Ruebeck performed surgery on Plaintiff's left thumb due to continued numbness following a laceration to her hand suffered in January 2003. (R. at 191-99). In the RFC Questionnaire, Dr. Ruebeck noted his treatment of the Plaintiff began in January 2003 and concluded in April 2003.[2] (R. at 201-05). Dr. Ruebeck indicated that Ms. Jeffreys continued to have muscle weakness, reflex abnormalities, and difficulty with dexterous movements. (R. at 201). He also noted Ms. Jeffreys often experienced deficiencies with attention and concentration and was capable of handling low stress jobs. (R. at 202). Dr. Ruebeck opined Ms. Jeffreys could perform sedentary work, lifting less than 10 pounds with the left upper extremity, no firm grasping, pounding or power gripping with the left upper extremity, and only occasional pushing/pulling, fine grasping and

---

[2] From the office visit narratives included in the record, it appears that Dr. Ruebeck continued to communicate with Ms. Jeffreys until mid-June 2003. (R. at 206). The last entry is dated June 17, 2003.

overhead work with that extremity. (R. at 203-04). He indicated that Ms. Jeffreys could work for 4 hours a day, 5 days a week (R. at 203), and that she could miss 3 days of work a month due to her symptoms. (Id.). In the RFC Questionnaire, Dr. Ruebeck also opined that Plaintiff's prognosis was "good," (R. at 201), and that "with rehabilitation, these would be temporary work restrictions." (R. at 205). He indicated Plaintiff's "recovery [was] expected in 6-12 months." (Id.).

The record also contains brief narratives describing Dr. Ruebeck's impressions following office visits with Ms. Jeffreys. In an entry dated April 15, 2003, Dr. Ruebeck indicates "[o]verall she is feeling better gradually. However, she will be undergoing treatment for reflex sympathetic dystrophy with sympathetic blocks." (R. at 206). The entry continues stating "[s]he does have an inability to radially abduct her index finger. All other intrinsic muscles of the hand are completely intact. She still has the vague discomfort through the hand ..." (Id.). In an entry dated May 6, 2003, Dr. Ruebeck states "Valerie Jeffreys stopped by the front desk today to obtain some other records. She will be seeing a chiropractor and has decided not to do the nerve injections. ... She feels that her hand is beginning to improve." (Id.). On June 17, 2003, Dr. Ruebeck noted "[h]er hand looks much better. She has actually had a return of function of the first dorsal interosseous muscle. There is no swelling. She complains of some tingling heading from the dorsum of her hand towards the mid-forearm." (Id.).

The decision of the ALJ carefully and thoroughly sets forth these opinions of Dr. Ruebeck, albeit in greater detail, frequently citing to the medical records and the RFC Questionnaire provided by the hand surgeon. (R. at 21-23). The ALJ also noted Plaintiff's decision not to pursue the block treatments as advised by Dr. Ruebeck, (R. at 21), as well as the lack of any evidence that Plaintiff sought treatment from any physician on an ongoing basis after 2003. (R. at 22). The ALJ specifically indicated his consideration

of Dr. Ruebeck's opinion that he felt Ms. Jeffreys' left hand was improving, (R. at 21), and that Ms. Jeffreys' employment restrictions would be temporary in nature with improvement in her condition expected with rehabilitation. (R. at 22). A review of the opinions of Dr. Rueback and the ALJ's decision clearly indicates to this Court that the ALJ thoroughly reviewed and appropriately considered the opinions of Plaintiff's treating physician, and gave these opinions substantial weight in his determinations regarding the severity and effects of Plaintiff's impairments.

### C.  The Inclusion of Plaintiff's Limitations in the ALJ's Hypotheticals

Plaintiff contends the ALJ did not sufficiently incorporate the limitations identified by Dr. Ruebeck into the hypothetical questions posed to the vocational expert. Plaintiff claims the ALJ left out limitations regarding her attention and concentration deficits and limitations regarding the duration of work she could perform and the number of breaks she would require. Plaintiff also contends the ALJ incorrectly placed a lifting restriction of "fifteen (15) pounds occasionally with the right upper extremity and a five (5) pound limit with her left upper extremity ..." when Dr. Ruebeck opined she could never lift more than ten (10) pounds. Plaintiff claims the ALJ's failure to correctly and completely include her limitations in the hypotheticals he asked the vocational expert constitutes reversible error.

"A hypothetical question must precisely describe a claimant's impairments so that the vocational expert may accurately assess whether jobs exist for the claimant." Newton v. Chater, 92 F.3d 688, 694-95 (8th Cir. 1996). Where a hypothetical question posed to a vocational expert does not accurately reflect the claimant's impairments, the expert's testimony cannot constitute substantial evidence on the record as a whole. See Pratt v. Sullivan, 956 F.2d 830, 836 (8th Cir.1992). Testimony from a vocational expert based on a proper hypothetical constitutes substantial evidence. See Roe v. Chater, 92 F.3d 672, 675 (8th

Cir. 1996).

Kenneth Ogren, a vocational expert, testified at the administrative hearing. The ALJ posed the following hypothetical to the vocational expert:

> Okay. Mr. Ogren. I'd like you to assume that we have a woman in her mid-forties, thenth-grade education, and she's also got a computer certificate, as she testified to. She's got past relevant work as set forth by Exhibit 20E. She's status post a left upper extremity–or in a hand–puncture wound in January of '03 with a subsequent surgery. Ans she has some RSD symptoms, secondary to that surgery. She has some chronic neck and back pain, secondary to a motor vehicle accident and injury in early '04. She also suffers from a headache disorder. I'm going to limit her to not–first–for the right upper extremity, fifteen pounds occasionally, five pounds more frequently. For the left upper extremity, only occasional use for job functions–it's 1/3 of the day or less. I'm going to limit to two pounds occasional use of the left arm, and no firm grasping. This individual is right hand dominant. She can sit eight of eight, she can stand–she can be on her feet six of eight. Only occasional bend, stoop, or crouch. Okay. With that, Mr. Ogren, could the claimant do any part of her past relevant work?

(R. at 410). The vocational expert testified that under the hypothetical, Ms. Jeffrey's could not perform any of her past relevant work. (R. at 410-11). However, the vocational expert next opined that the hypothetical individual could perform other jobs in the national economy including work as a telemarketer (1,000 jobs in Minnesota), as an information clerk (237 jobs in Minnesota), and as a companion (500 jobs in Minnesota). (R. at 411-12).

The ALJ then asked the vocational expert "if this individual had flares in her RSD, such that she couldn't work a full day, one day per week, or just actually some–one day per week got up and just couldn't go to work because of the pain she was experiencing." (R. at 413). To which the vocational expert replied "[i]f she missed one day per week, there would–no jobs exist." (Id.). Ms. Jeffrey's attorney declined the opportunity to ask the vocational expert any questions after the ALJ concluded his inquiry based upon these hypotheticals.

The Court finds the first hypothetical question posed by the ALJ accurately reflects the plaintiff's limitations. This hypothetical question accurately reflects the totality of the medical evidence contained in the record from both treating and consulting physicians. While Dr. Ruebeck opined Ms. Jeffreys suffered from certain limitations, including lifting restrictions and Plaintiff's need to take breaks and miss work, Dr. Ruebeck specifically stated these limitations were temporary and would improve with rehabilitation. (R. at 205). The ALJ specifically cites evidence in the record that demonstrates Ms. Jeffrey's condition indeed improved, including the results of a nerve conduction study and EMG in August 2003 that showed evidence of regeneration and reinnervation in Plaintiff's left hand. (R. at 22, 270). The ALJ referenced medical records from June 2003 that indicated Plaintiff showed no significant clinical abnormalities of her left hand (R. at 22).

Plaintiff underwent physical therapy following her hand surgery, and her therapist indicated continual improvement in Plaintiff's ability to grip with her left hand and to flex her index finger and thumb of her left hand. (R. 221-32). On April 23, 2003, the therapist indicated Ms. Jeffreys "was able to stretch index and thumb to full limit. Measured strength today, slight gains since last checked." (R. at 230). On April 29, 2003, Plaintiff and the therapist agreed that the physical therapy sessions can be reduced to twice a week because her range of motion is less limited and her strength has improved. (R. at 231). On May 6, 2003, the therapist reported that Ms. Jeffreys would be discontinuing her therapy. (Id.).

Dr. Marston, also an orthopedic surgeon, examined Ms. Jeffreys on June 16, 2003, and noted no color difference between her left and right hands, no difference in temperature in the hands, no perspiration, and the range of motion in her index finger of the left hand was intact. (R. at 248). The medical records indicate Plaintiff was also seen by an orthopedic staff physician on June 16, 2003. In the written

9

examination notes, Dr. Varecka reported "no obvious swelling, discoloration, or deformity. ... She has full range of motion in her wrist and fingers." (R. at 282). Dr. Varecka also indicates Ms. Jeffreys was "able to make an okay sign with her left hand and resist any pull through on this approximately equivalent to the opposite side, though with isolated testing on the first dorsal interosseous, she does seem to have some 'give-way' weakness." (Id.).

Finally, at the hearing, the ALJ directly asked the Plaintiff "[t]here is nothing wrong with your right arm, is there?" Ms. Jeffrey's answered "No." (R. at 398). Ms. Jeffreys testified that she frequently performs her own housework, such as making her bed, cleaning up behind herself, and washing her clothes. (R. at 383-84). Plaintiff also testified that she has not sought medical treatment for her left hand since October 2003. (R. at 22). In addition, although the testifying medical expert opined the Plaintiff had no sit or stand restrictions, (R. at 407), the ALJ included both right and left extremity lifting restrictions and a standing restriction in the first hypothetical he posed to the vocational expert. (R. at 410).

The Court finds Plaintiff's argument that the ALJ failed to present a proper hypothetical unpersuasive as the argument pertains to the ALJ's first hypothetical. From the medical evidence in the record, as well as from Plaintiff's own testimony, the Court concludes the first hypothetical adequately and accurately reflects the severity and limitations of Plaintiff's impairments across the time period from her hand injury to the date of the hearing. The medical evidence in the record substantially supports a finding that Plaintiff's impairments improved with rehabilitation as predicted by Dr. Ruebeck in the RFC Questionnaire.

As for the ALJ's second hypothetical, the Court finds no evidence whatsoever to support the ALJ's second hypothetical regarding the hypothetical individual missing one day of work a week due to flares in her RSD. Dr. Ruebeck indicated in May 2003 that he estimated Ms. Jeffreys, at that time, would

likely miss work three times a month due to symptoms related to her physical impairments. (R. at 203). However, as has been repeatedly pointed out, Dr. Ruebeck stated Plaintiff's limitations would be temporary and recovery was expected in 6-12 months. (R. at 205). The medical evidence in this case, as described above, indicates that improvement indeed occurred. Moreover, on the RFC Questionnaire, Dr. Rubeck had the option of indicating that Ms. Jeffreys would likely miss work "four or more times per month" due to her symptoms, but specifically estimated three times per month instead. (R. at 203). Plaintiff's reliance on Dr. Ruebeck's opinions to support a finding of no available jobs under the Plaintiff's limitations misstates the medical evidence and is without merit.

While it is true that the vocational expert opined that an absence from work of one day per week would result in there being no jobs available for the hypothetical person to perform, the Court finds no basis in the medical evidence for a finding that Ms. Jeffreys suffers from any such limitation. Indeed, the ALJ declined to make such a finding. The Court finds the ALJ correctly afforded no weight to this opinion of the vocation expert, as the hypothetical upon which it is based was not supported by the medical evidence in the record. In sum, this Court finds no error in the ALJ's findings when considered in the context of the hypothetical questions he posed to the vocational expert at the administrative hearing.

### D.     ALJ's Decision Substantially Supported by the Record

As is evidenced in the medical records discussed herein, the Court finds that numerous medical opinions, from both treating and consulting physicians, as well as the Plaintiff's own testimony, support the opinions of Dr. Ruebeck and the hypothetical inquiries and conclusions of the ALJ. Accordingly, the Court concludes that the evidence set forth in the entire administrative record substantially supports the ALJ's through and well-reasoned determination in this case.

**III.    CONCLUSION**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

       (1)    Plaintiff's Motion for Summary Judgment (Doc. No. 10) be **DENIED.**

       (2)    Defendant Commissioner's Motion for Summary Judgment (Doc. No. 14) be **GRANTED,** and this case be **DISMISSED WITH PREJUDICE.**

Dated: June 6, 2006.                      s/Jeanne J. Graham

                                              JEANNE J. GRAHAM
                                              United States Magistrate Judge

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by June 26, 2006. A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. A District Judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.